# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DAVIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | Case No. ED CV 11-2033 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

Brian Davis ("Plaintiff") challenges the Social Security Commissioner's ("Defendant") decision denying his application for disability benefits. Two issues are presented for decision here:

　　1.　whether the Administrative Law Judge ("ALJ") erred at step five in finding that Plaintiff could perform the positions of industrial cleaner, landscape worker, and dishwasher, (*see* Joint Stip. at 3-7); and

　　2.　whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Arvind Salwan. (*See id.* at 18-22.)

　　The Court addresses – and rejects – Plaintiff's contentions below.

\\\

### A. The ALJ's Step Five Determination

Plaintiff first complains that the ALJ improperly concluded at step five, based upon the testimony of the vocational expert ("VE"), that he could perform the duties of an industrial cleaner, landscape worker, and dishwasher. Specifically, Plaintiff argues that these positions, as described by the *Dictionary of Occupational Titles* ("DOT"), conflict with his residual functional capacity ("RFC") prohibiting him from "operat[ing] motorized equipment [and] work[ing] around unprotected machinery." (Joint Stip. at 5-6; *see* AR at 19.) The Court, however, is unpersuaded.

As a matter of law, neither the DOT nor the testimony of a VE "automatically 'trumps' when there is a conflict" between the two. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (footnote omitted). Instead, if a conflict *appears* to exist, the ALJ must obtain a "reasonable explanation" for that conflict. *See* SSR 00-4p, 2000 WL 1898704, at *4.

Here, no such conflict appears to exist between the DOT and the VE's testimony. Three reasons guide that determination.

First, the positions of industrial cleaner and dish washer do not require performance of all of the duties described by their DOT entries. These entries merely require the performance of "any combination" of the described duties. *See* DOT 381.687-018, DOT 318.687-010. Thus, even if the job duties described by the DOT conflict with Plaintiff's RFC – which, as shown below, is a doubtful proposition – those duties are not crucial to the position. Consequently, no inherent conflict exists between Plaintiff's RFC and the DOT. *See Ballesteros v. Astrue*, 2011 WL 836656, at *4 (C.D. Cal. Mar. 8, 2011) (reasoning the same). At minimum, then, the positions of industrial cleaner and dish washer are viable ones, and any error pertaining to the landscape worker position is harmless. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (harmless errors do not warrant reversal).

Second, regarding the limitation against operating motorized equipment, the

Court notes that all three positions largely mandate the use of simple, handheld tools. *See, e.g.,* DOT 381.687-018 (handtrucks and steam cleaners), DOT 406.687-010 (grass seed spreaders and general handtools), DOT 318.687-010 (brooms, mops, and handtrucks). Where the DOT describes equipment that is arguably motorized, it does not require their use. For instance, under the DOT, an industrial cleaner "[m]ay" operate an industrial truck to transport materials. DOT 381.687-018. Similarly, a landscape specialist has the option of mowing lawns with "hand mower *or* [a] power-driven lawnmower." DOT 406.687-010 (emphasis added). Likewise, a dish washer may peel vegetables "using [a] knife *or* peeling machine." DOT 318.687-010 (emphasis added).

Third, as for the limitation against working around unprotected machinery, the DOT describes these positions as requiring no interaction with "[m]oving [m]ech[anical] [p]arts." *See* DOT 381.687-018, DOT 406.687-010, DOT 318.687-010. Presumably, in the absence of any moving parts, there is nothing from which one would need protection. Thus, it is unlikely that these positions involve unprotected machinery.

Accordingly, the Court does not find error with the ALJ's step five determination.

B. <u>The ALJ's Rejection of Dr. Salwan's Treating Opinion</u>

Plaintiff next asserts that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Salwan. (Joint Stip. at 18-22.)

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where the "treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons

supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

Here, the ALJ gave two valid reasons for discrediting the opinion of Dr. Salwan.

First, the ALJ noted that Dr. Salwan's opinion was presented via a "checklist-style form" that included "only conclusions regarding functional limitations without any rationale for [them]." (AR at 22); *see Batson*, 359 F.3d at 1195 (holding that an ALJ may reject a treating physician's opinion if it is conclusory, brief, and unsupported).

Second, the ALJ also found that Dr. Salwan's opinion was "not supported by the objective evidence." (AR at 22); *see Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating opinions as unsupported by medical findings, personal observations or test reports). Specifically, the ALJ found that Dr. Salwan's finding of severe neuropathy was undercut by the medical record, which suggested that Plaintiff only had "some residuals in his left arm" following his arm surgery. (AR at 22.) As the ALJ discussed earlier in his decision, the record suggests that Plaintiff's condition improved within a year and ultimately did not cause any functional limitations. (AR at 18; *see* AR at 178-79 (discharge summary indicating that "infection is well controlled" but some pain and swelling remain), AR at 502-505 (progress reports indicating improvement up to date of discharge).)

As for Dr. Salwan's finding of partial blindness, the ALJ properly relied on the medical expert's testimony, which cited Dr. Sava's opthamology report as evidence that Plaintiff's vision was correctable and that the acuity of his right eye was 20/30. (AR at 22; *see* AR at 37, 477-78); *see also Thomas v. Barnhart*, 278

4

1 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining
2 physicians may also serve as substantial evidence when the opinions are consistent
3 with independent clinical findings or other evidence in the record"). Notably,
4 Plaintiff does not cite any evidence in the record to refute the ALJ's conclusion that
5 Dr. Salwan's opinion was unsupported by the record. (*See* Joint Stip. at 18-22.)

6       Accordingly, the Court finds that the ALJ properly rejected Dr. Salwan's
7 treating opinion.[1]

8       For the above reasons, the Court further finds substantial evidence supported
9 the ALJ's decision that Plaintiff was not disabled. *See Mayes v. Massanari*, 276
10 F.3d 453, 458-59 (9th Cir. 2001).

11       Based on the foregoing, IT IS ORDERED THAT judgment shall be entered
12 **AFFIRMING** the decision of the Commissioner denying benefits.

14 Dated: November 20, 2012

15                       _____
16                          Hon. Jay C. Gandhi
17                        United States Magistrate Judge

---

[1] Since the Court finds no error with the ALJ's treatment of Dr. Salwan's opinion, it also rejects Plaintiff's related complaint alleging that the ALJ incorrectly assessed Plaintiff's RFC. (*See* Joint Stip. at 32-33.)

5